# IN THE COURT OF APPEALS OF IOWA

No. 13-1478
Filed April 8, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JAMES ALLEN BREEN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Ian K. Thornhill,
Judge.

        A defendant appeals from the judgment and sentence entered following
his convictions of attempt to commit murder, willful injury, and carrying weapons.
**AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Bradley M. Bender,
Assistant Appellate Defender, for appellant.

        James Allen Breen, Anamosa, pro se.

        Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney
General, and Jerry Vander Sanden, County Attorney, for appellee.

        Considered by Tabor, P.J., Mullins, J., and Eisenhauer, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**EISENHAUER, S.J.**

James Allen Breen appeals from the judgment and sentence entered following his convictions of attempt to commit murder, willful injury, and carrying weapons. He contends the evidence is inadequate to support his convictions of attempt to commit murder and willful injury and the trial court erred in failing to inquire into an alleged conflict of interest. In his pro se brief, Breen also challenges the finding he did not act in self-defense and alleges his trial counsel was ineffective. Having considered and rejected these claims, we affirm.

**I. Background Facts and Proceedings.**

On November 18, 2012, law enforcement officers were summoned to a bar in Cedar Rapids where Breen had shot Cory Forbes. Over the course of the night, Breen had been drinking with Forbes and Forbes's cousin, Sean Hiepler. Breen and Hiepler got into an argument at the bar, and Breen challenged Hiepler to take their argument outside. Hiepler agreed, assuming a fistfight would ensue.

Once outside, Breen pulled a semi-automatic handgun from the waistband of his jeans and pointed it at Hiepler's chest. Hiepler attempted to take the gun from Breen, but Breen stepped back and cocked the gun. At that point, Forbes tackled Breen, and the gun discharged three times, the bullets striking Forbes twice in the abdomen and once in the thigh. Breen landed on top of Forbes. Hiepler pulled Breen off of Forbes and subdued him until law enforcement arrived.

Breen was taken by ambulance to a local hospital where a blood test revealed his blood alcohol content was .272. Testifying in his own defense, Breen admitted he could remember being attacked outside of the bar and

hearing gunshots, but he did not recall pointing the gun at Hiepler or pulling the trigger.

Paul Perry, a pharmacology expert, estimated Breen's blood alcohol content at the time of the shooting would have been between .280 and .287, which Perry believed caused Breen to suffer anterograde amnesia. Perry further testified this level of intoxication would have significantly affected Breen's ability to plan, think critically, and govern self-directed behavior. Perry opined Breen was unable to form the specific intent necessary for the crime of attempt to commit murder, though he admitted he was unaware of the legal definition of specific intent.

At trial, the defense called Polk County Sheriff's Sergeant Keith Romp as an expert on weapons and force science. Romp testified the trigger-pull weight for Breen's handgun was at the lower end of the spectrum for trigger-pull weights for handguns.

At the close of Breen's bench trial, the district court found Breen guilty of attempt to commit murder, willful injury, and carrying weapons. The court found Breen not guilty of going armed with intent.

**II. Judgment of Acquittal.**

Breen contends the district court erred in denying his motion for judgment of acquittal, claiming the State failed to establish the specific intent necessary to support his convictions of attempt to commit murder and willful injury. In order to be found guilty of attempt to commit murder, the State had to prove Breen "specifically intended to cause the death of Cory Forbes." To be found guilty of willfully injury, the State had to prove "Breen specifically intended to cause a

serious injury to Corey Forbes." Breen argues his intoxication and the ease with which the gun could discharge create the reasonable doubt necessary to acquit him.

We review a ruling on a motion for judgment of acquittal for corrections of errors at law. *See* Iowa R. App. P. 6.907. A motion for judgment of acquittal is a means of challenging the sufficiency of the evidence to support a conviction. *State v. Bentley*, 757 N.W.2d 257, 262 (Iowa 2008). A guilty verdict must be supported by substantial evidence. *Id.* A verdict is supported by substantial evidence if, upon considering all the evidence in the record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.* When reviewing the denial of a motion for judgment of acquittal, we view the evidence in the light most favorable to the State. *See id.*

Because substantial evidence shows Breen discharged his weapon on the night in question with the specific purpose of causing death and serious injury to Forbes, we conclude the district court properly denied Breen's motion for judgment of acquittal. Breen challenged Hiepler to go outside to settle their dispute. Even though the district court was not convinced beyond a reasonable doubt Breen intended to shoot Hiepler when they left the bar, once outside he removed a gun from his waistband, slid the bolt handle back to chamber a round, and pointed the gun at Hiepler. These acts were all indisputably intentional. Then, when Forbes tackled him, Breen was able to reorient his weapon toward Forbes and discharge it three times.

Breen argues he was too intoxicated to form the necessary intent to find him guilty of either charge. Intoxication is a defense only if it renders a person

incapable of incapable of forming the requisite specific intent necessary to commit a crime. *See State v. Cordero*, ___ N.W.2d ___, ___, 2015 WL 1260153, at *5 (Iowa 2015). Although Dr. Perry opined Breen could not form the specific intent to attempt to murder and seriously injure Forbes, the district court noted Dr. Perry was unaware of the legal definition of specific intent and did not review the jury instruction defining specific intent before reaching his conclusion. It found:

> Professor Perry acknowledged intoxicated people can make decisions, but seemed to equate critical thinking to rational decision making. He also agreed people who are disinhibited due to the consumption of alcohol are still capable of making voluntary choices. Finally, Professor Perry agreed that pulling a weapon, disengaging the safety on that weapon, chambering a round, and pulling the trigger can all qualify as purposeful and deliberate acts.

Viewed in the light most favorable to the State, substantial evidence establishes that although Breen was intoxicated and his reasoning and memory were impaired, he still possessed the ability to act with a purpose, and that purpose was to kill Forbes as well as to seriously injure him.

Breen also alleges there is insufficient evidence to establish he discharged his gun voluntarily. He argues it is possible the gun discharged when he squeezed the trigger as a result of an involuntary reflex. After reviewing the evidence in the light most favorable to the State, we find the evidence shows the act of shooting Forbes required Breen to pull the trigger one-and-one-half inches, release it one inch, pull it again, release it, and pull it a third time—each time using more than nominal force. As such, the evidence supports a finding Breen acted deliberately in firing the weapon at Forbes.

### III. New Trial.

Breen also contends the trial court erred in denying his motion for new trial because the verdict is contrary to the weight of the evidence. His argument focuses on the specific intent element of both crimes, again citing the expert witness testimony regarding his intoxication and the gun's trigger-pull weight.

Our scope of review for rulings on motions for new trial is for corrections of errors at law. *See* Iowa R. App. P. 6.907. The standard for granting a motion for new trial is whether the verdict is contrary to the weight of the evidence. *State v. Reeves*, 670 N.W.2d 199, 201 (Iowa 2003). Because a motion for new trial on the grounds the verdict is contrary to the weight of the evidence concedes there is sufficient evidence to sustain the verdict, there is no need to view the evidence in the light most favorable to the State. *See id.* at 202. The district court is accorded broad discretion in ruling on a motion for new trial, and we reverse only if that discretion is abused. *Id.* To establish an abuse of discretion, the moving party must show the district court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Id.* Furthermore, our review is limited to a review of the exercise of the district court's discretion, not of the underlying question of whether the verdict is against the weight of the evidence. *Id.*

We conclude the district court was acting within its discretion when it denied Breen's motion for new trial. The court weighed the arguments Breen made regarding his intoxication and the possibility his weapon discharged inadvertently and set forth specific reasons for finding Breen had the mental capacity to form specific intent and fired his weapon at Forbes with specific

intent. These reasons were adequate for the court to conclude the weight of the evidence established the necessary specific intent for the crimes of attempt to murder and willful injury. Breen has failed to show the district court abused its discretion in weighing the evidence.

### IV. Conflict of Interest.

Breen next contends the district court erred in failing to inquire into an alleged conflict of interest. David Cirves, one of the bar patrons, testified for the State at trial regarding his observations on the night in question. During cross-examination, Cirves testified Breen's trial counsel was representing him in a divorce proceeding at the time of her appearance in this case, but he had signed a waiver of actual conflict, ending her representation of him and agreeing to allow her to represent Breen in the criminal matter. The court did not make further inquiry into the potential conflict of interest.

Whether a conflict of interest exists is a mixed question of law and fact. *State v. McKinley*, ___ N.W.2d ___, ___, 2015 WL 1087972, at *2 (Iowa 2015). Generally, we review claims the constitutional right to counsel was violated de novo. *Id.* The determination of whether the facts show an actual conflict of interest or a serious potential for conflict is within the trial court's discretion, and we review these determinations for an abuse of discretion. *Id.*

A conflict of interest does not exist just because a party asserts it does. *See id.* at ___, at *5. We must independently evaluate whether the circumstances show an actual conflict or serious potential for conflict. *Id.* An actual conflict exists where there is "'a conflict of interest that adversely affects counsel's performance.'" *Id.* (quoting *Mickens v. Taylor*, 535 U.S. 162, 172 n.5

(2002)). Our supreme court has recognized that while joint representation of a defendant and witness during trial can prevent the attorney from providing effective representation, the suspicion of harm lessens where the court makes "an inquiry of some form into the conflict," as does a lack of objection by the defendant. *State v. Smitherman*, 733 N.W.2d 341, 348 (Iowa 2007) (articulating the reasoning for applying the "adverse effect" standard).

Breen has failed to show he was adversely affected by his trial counsel's representation of Cirves. Counsel withdrew from representing Cirves when she began representing Breen, and Cirves agreed to allow her to represent Breen and to withdraw from representing him in his divorce. Cirves further testified Breen's counsel had not learned any confidences or secrets in her representation of him. Given the brief overlap in representation of the defendant and a State witness in unrelated matters, there is no substantial likelihood counsel's representation of Cirves in an unrelated personal matter would adversely affect her ability to competently represent Breen in this matter. Accordingly, no conflict of interest exists.

### V. Defense of Self.

In his pro se brief, Breen contends the district court erred in failing to find he acted in defense of himself and was therefore justified in shooting Forbes. Although Breen did not file a notice of self-defense, the trial court stated it would have rejected the claim if it had been properly raised. Because Breen did not preserve error on this issue, we will not address it on appeal. *See State v. DeWitt*, 811 N.W.2d 460, 467 (Iowa 2012) (noting the appellate courts do not review issues not raised before or decided by the district court).

**VI. Ineffective Assistance of Counsel.**

In his pro se brief, Breen also contends his trial counsel was ineffective in failing to move for judgment of acquittal on the basis the act of shooting Forbes was a protected activity under the Second Amendment. In the alternative, he claims his trial counsel was ineffective in failing to challenge Iowa Code section 704.1 as a violation of his Second Amendment rights.

In order to prove a claim of ineffective assistance of counsel, a defendant must prove two elements: (1) counsel failed to perform a duty and (2) prejudice resulted. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). The inability to prove either element is fatal to the claim. *Id.* To prove the first element, a defendant must show counsel's performance fell outside the normal range of competency. *State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009). Counsel has no duty to raise an issue that has no merit. *Id.*

Iowa Code section 704.1 defines reasonable force. It provides in pertinent part:

> Reasonable force, including deadly force, may be used even if an alternative course of action is available if the alternative entails a risk to life or safety, or the life or safety of a third party, or requires one to abandon or retreat from one's dwelling or place of business or employment.

Breen argues section 704.1 violates the Second Amendment because it does not allow a person outside of their dwelling or place of employment to use deadly force even if retreating is an available, alternative course of action. Iowa Code section 704.1 simply limits how one can defend oneself.

The Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear

Arms, shall not be infringed."  It is true that "the inherent right of self-defense has been central to the Second Amendment right."  *Dist. of Columbia v. Heller*, 554 U.S. 570, 628, 635 (2008) (holding a "ban on handgun possession in the home violates the Second Amendment, as does [the ban's] prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense").  However, as the United States Supreme Court has observed, it "does not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for *any purpose*."  *Id.* at 595.

Because the claims Breen alleges counsel had a duty to raise are without merit, he cannot show his trial counsel failed to perform a duty.  Accordingly, his claims of ineffective assistance of counsel fail.

**AFFIRMED.**